UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-80114-Cr-Hurley/Vitunac

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ALVIN G. KEEL,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States District Judge Daniel T.K. Hurley for disposition of all pending pretrial criminal motions. Before the Court is the Defendant's Motion to Dismiss Indictment (DE 25), filed on September 5, 2006. The Government filed a response (DE 28) to this motion on September 21, 2006. The Court conducted an evidentiary hearing on September 25, 2006. This matter is now ripe for review.

### Defendant's Written Motion to Dismiss

In his Motion to Dismiss, the Defendant alleges that on July 14, 1998, he was charged with a single count of knowingly attempting to transport loggerhead sea turtle eggs in violation of 16 U.S.C. §§ 1538(a)(1)(G), 3372(a)(1), 3372(a)(4), and 3373(d)(1)(B). The Defendant pled guilty, and in 1999 was sentenced to the maximum of five (5) years imprisonment and three (3) years of supervised release.

According to the Defendant, he served his five-year term of imprisonment and a portion of his supervised release. While on supervised release, the Defendant allegedly

violated six conditions of his supervision (five violations for drug use and one violation for failing to report a change of address). On May 28, 2004, the Probation Department filed a Petition for Revocation and the Court issued a warrant for the Defendant's arrest.

On June 4, 2004 the Defendant was reportedly seen taking sea turtle eggs from Juno Beach, Florida. Local law enforcement was notified and arrived to scene. Law enforcement stopped the Defendant and a computer check revealed that he had an outstanding warrant for violation of his probation. Subsequent to this discovery, law enforcement placed the Defendant under arrest.

The Defendant maintains that at his initial appearance, he admitted to his six violations of his supervised release. On June 14, 2004, the Probation Department filed an amended superceding petition adding a seventh violation: attempting on to transport sea turtle eggs, in violation of 16 U.S.C. §§ 3372(a)(1), 3372(a)(4), and 3373(d)(1)(B). The Defendant contested this alleged violation, and on July 9, 2004, the Court held an evidentiary hearing. Following the hearing, the Court issued a report and recommended finding that the Defendant had committed all seven of the violations of the supervised release. At the August 6, 2004 sentencing, the Court imposed 23 months of additional incarceration and an additional year of supervised release.

The Defendant appealed to the Eleventh Circuit Court of Appeals, arguing among other things, that the sentence violated <u>Apprendi</u>. Following oral arguments on the issue, the Eleventh Circuit affirmed the Defendant's sentence. The Defendant finished his incarceration portion of his sentence and began his supervised release. While on supervised release, the Defendant filed a writ for certiorari in the United States Supreme

2

Court regarding the Apprendi issue. The Government waived its right to respond to the petition, and on June 2, 2006 the Supreme Court ordered the Government to file a response.

On July 21, 2006, prior to filing its response for the Supreme Court, the Government indicted the Defendant for the transportation of loggerhead sea turtle eggs on June 4, 2004, in violation of 16 U.S.C. §§ 1538(a)(1)(G), 3372(a)(1), and 3373(d)(1)(B). Subsequent to this indictment, the Defendant was taken back into custody in connection with these new charges. On September 5, 2006, the Defendant filed a Motion to Dismiss the Indictment on Due Process and speedy trial grounds. The motion to dismiss is before this Court.

The Defendant maintains that the indictment should be dismissed as it violates: (1) his right to due process of law; (2) his statutory right to a speedy trial; and (3) his constitutional right to a speedy trial. The following is a brief overview of the Defendant's claims:

### 1. Defendant's Due Process Argument

The Defendant argues that this matter is governed by Lovasco. See infra p. 10. According to the Defendant, Lovasco requires a dismissal of an indictment where (1) the Government deliberately delays indicting a defendant to gain a tactical advantage over him; and (2) the defendant can show prejudice for the delay. In his motion, the Defendant maintains that the "Government's investigation of the June 4 [2004] sea turtle egg incident. . . was undoubtably complete by the July 9, 2004 revocation hearing." The Defendant further argues that the Government delayed indicting him by two years in order to gain a

tactical advantage. That is, by allowing the Defendant to serve his additional 23 months for his violation of supervised release before indicting him, the Government has "imposed a much harsher aggregate sentence than either Congress or the Sentencing Commission intended for a turtle egg poaching offense." The Defendant submits that the harshness of such a sentence is "inherently prejudicial."

### 2. Defendant's Statutory Speedy Trial Argument

The Defendant claims that 18 U.S.C. § 3161 ("Speedy Trial Act") mandates dismissal of his indictment. Specifically, the Defendant maintains that "since [he] was arrested in 2004 in connection with charges that did not formally become the subject of an indictment until July 2006, § 3161(a) of the Speedy Trial Act was violated. . . ." In support of this, the Defendant cites to both Eleventh and Ninth Circuit precedent which, according to the Defendant, "broadly construe the term 'arrest' in the Speedy Trial Act." The Defendant characterizes the Government's actions as a "ruse to keep him in a revolving door of jail and supervision, to circumvent and exceed the statutory maximum." Last, the Defendant relies on a Ninth Circuit case which states, in pertinent part, where there is evidence that the government used parole violations to delay obtaining an indictment, arrest for parole violations would trigger provisions of the Speedy Trial Act.

### 3. Defendant's Constitutional Speedy Trial Argument

The Defendant's final argument is that the indictment should be dismissed as it violates his Sixth Amendment right to a Speedy Trial. In his motion, the Defendant maintains that the facts of his case satisfy the four-prong test established by the Supreme Court in Barker. See infra p. 13. In sum, the Defendant argues the following:

(1) Length of delay: Defendant argues that the period of delay is more than one year and is therefore presumptively prejudicial.

(2) Reason for delay: The Defendant maintains that the government did not engage in any good faith effort to indict the Defendant during the period of the delay.

(3) Assertion of Right: The Defendant maintains that he is properly asserting his right in by filing this timely Motion to Dismiss

(4) Prejudice: According to the Defendant, there is no need to show prejudice as the first three factors of Barker weigh heavily against the Government. In the alternative, the Defendant argues that prejudice would be established by permitting the Government secure an aggregate sentence which exceeds the 5-year statutory maximum.

## The Government's Response

On September 21, 2006 the Government filed its response to the Defendant's Motion to Dismiss. According to the Government, the Defendant has been convicted of criminal offenses involving the poaching of sea turtle eggs in Palm Beach County four times in State Court and three times in Federal Court dating back to 1989. The Government states that the Defendant's most recent conviction involved his taking of 383 sea turtle eggs from the beach on Singer Island in 1998. The Court sentenced the Defendant to five years in prison and three years of supervised release.

The Government further submits the Defendant was released on October 4, 2002, and violated his terms of supervised release by using cocaine and failing to participate in a drug treatment program. Beginning in September 2003, the Defendant committed numerous further violations of his release by submitting five urine samples which tested

5

positive for cocaine, failing to report to further drug testing, and changing his residence without notifying probation. The Government states that based on these violations, the Court signed a Violation of Supervised Release Petition on May 28, 2004 and issued a warrant for the Defendant's arrest.

The Government maintains that on June 4, 2004, two researchers watched a man take sea turtle eggs from Juno Beach. The researchers contacted the Juno Beach Police, who responded to the scene within a couple of hours. Later that night, law enforcement stopped the Defendant as he walked along route A1A. According to the Government, a computer check revealed that the Defendant had an outstanding warrant in connection with his violations of supervised release. The two researchers were brought to the scene of the arrest and positively identified the Defendant as the individual whom they witness taking eggs.

The Government alleges that following the arrest of the Defendant, a petition for revocation of supervised release was filed with the Court. The Defendant admitted to six violations, and on June 14, 2004, the petition was amended to include a violation based on the taking of the sea turtle eggs the night of June 4th. On July 9, 2004, the Defendant re-admitted to the first six violations and denied the violation involving the turtle eggs. Following the hearing, the magistrate judge issued a report and recommendation finding that the Defendant committed all seven violations. The Defendant was then sentenced to 23 months to be followed by one more year of supervised release. This sentence is now on appeal.

The Government submits that in the weeks and months following the Defendant's

initial arrest for his supervised release violations, it pursued the investigation of the alleged turtle egg poaching. Following this, the Government maintains that it began preparation for a number of major trials and still had not decided to seek an indictment against the Defendant for the poaching crime. In February of 2006, the Defendant was released from prison and was residing in Palm Beach County while serving the remainder of his term of supervised release. The Government submits that on July 10, 2006, four turtle eggs were taken from their nests on Singer Island. Following this, the Government decided to seek an indictment against the Defendant for his alleged June 4, 2004 egg poaching.

In its response, the Government maintains that there has been no violation of the Defendant's right to speedy trial and that his due process claim is without merit. In support of this, the Government offers the following:

*1. Speedy Trial*

The Government argues that the Speedy Trial Act was not triggered by the Defendant's arrest in June of 2004. The 2004 arrest, according to the Government, was in connection with a warrant for the Defendant's arrest for his violations of supervised release. In support of this, the Government cites to Nixon, an Eleventh Circuit case in which the Court held that a speedy trial claim must stand or fall on its own merits, based upon when the defendant was accused, by arrest or indictment, of that specific crime. See infra p. 12. Accordingly, states the Government, the Defendant's argument that the supervised release violation arrest was "in connection with" the current charges involving taking of sea turtle eggs is "completely without merit."

7

## 2. *Pre-Indictment Delay*

The Government and the Defendant both recognize that the <u>Lovasco</u> test guides pre-indictment delay cases. In its response, the Government argues that bad faith on behalf of the Government is a necessary element to satisfy <u>Lovasco</u>. In doing so, the Government cites to <u>Thomas</u>, a case which concludes that it [the Government] is under no obligation to bring charges as soon as it has enough evidence to indict. 62 F.3d 1332 (1st Cir. 1995). The Government also cites a Third Circuit case which notes that the Government may be justified in delaying prosecution of a case when the prosecutor on the case has obligations to other trials. The Government concludes that there is no evidence that it acted in bad faith when waiting to indict the Defendant in the present case. Last, the Government maintains that the Defendant did not suffer actual prejudice as a result of the alleged delay in indictment. In support of this, the Government notes that the two key witnesses to the alleged turtle egg poaching are alive and available to testify.

### Evidentiary Hearing

The Defendant called Officer William Calvert of the United States Fish and Wildlife Service. Officer Calvert testified that on June 4, 2004, he received a call from the Florida Fish and Wildlife Commission regarding the Defendant and his possible involvement in turtle egg poaching. The witness testified that he responded to the call and briefly questioned the Defendant regarding the alleged poaching. On June 9, Officer Calvert met with two people who purportedly witnessed the Defendant taking the turtle eggs on June 4. Officer Calvert testified that during this meeting, the two witnesses identified the Defendant as the June 4, 2004 poacher. Officer Calvert then filed a report regarding the

8

matter the next day.

Officer Calvert further testified that he spoke with the witnesses again on June 24, 2004 and July 8, 2004. Calvert stated that on July 8, 2004, the investigation was complete, and over the next two years he kept in contact periodically with the witnesses. Officer Calvert stated that he testified at the Defendant's July 9, 2004 supervised release violation hearing. According to Calvert, his only testimony at the supervised release hearing was in regard to the June 4, 2004 turtle egg incident.

Officer Calvert also testified that between July 2004 and July 2006, he contacted the United States Attorney's office and made inquires regarding the filing of charges against that Defendant in connection with the June 4, 2004 turtle egg incident. He testified that the egg poaching case appeared not to be a high priority for the U.S. Attorney's office. He also stated that he felt the Government was waiting to see how the Eleventh Circuit ruled on an appeal in a separate case against the Defendant before they brought new charges in connection with this matter.

The witness testified that on July 10, 2006, another turtle egg poaching occurred in the area. Law enforcement suspected that the Defendant may have had something to do with the incident, however, it did not have enough evidence to indict him. According to Calvert, the United States Attorney's office then decided to seek an indictment against the defendant for the June 4, 2004 turtle egg incident. Calvert then testified that an indictment was returned on July 21, 2006, and the Defendant was arrested the same day. The indictment, according to Officer Calvert, charged the Defendant with transportation of loggerhead sea turtle eggs on June 4, 2004, in violation of 16 U.S.C. §§ 1538(a)(1)(G),

3372(a)(1), and 3373(d)(1)(B).

## Discussion

*1. Due Process and Pre-indictment Delay*

Where possibility of prejudice derives from pre-indictment delay, the defendant in a criminal case must first resort to the applicable statute of limitations. See <u>United States v. Lovasco</u>, 431 U.S. 783 (1977); <u>United States v. Marion</u>, 404 U.S. 307 (1971). However, the Due Process Clause can bar an indictment even when the indictment is brought within the limitation period. <u>Id</u>. Under <u>Lovasco</u> and <u>Marion</u>, a dismissal of an indictment for pre-indictment delay is warranted when:

> (1) the delay caused substantial prejudice to the Defendant; <u>and</u>
>
> (2) the delay was the product of a deliberate act by the Government designed to gain a tactical advantage. <u>Id</u>.

*a. Substantial Prejudice*

"Substantial prejudice" has frequently been addressed by the Court. <u>See e.g.</u>, <u>United States v. Young</u>, 906 F.2d 615, 620 (11th Cir. 1990) (prejudice cannot be demonstrated by mere speculation); <u>United States v. Brand</u>, 556 F.2d 1312 (5th Cir. 1977) (finding that any prejudice asserted by the Defendant must be balanced against the Government's need for an investigative delay); <u>United States v. Butts</u>, 524 F.2d 975 (5th Cir. 1975) (the mere passage of time does not constitute prejudice).

Here, the Defendant maintains the Government's delay in seeking his indictment is "inherently prejudicial" as it "circumvent[s] the otherwise applicable maximum penalties." This Court disagrees. It is perfectly acceptable for the Government to seek a separate

prosecution for actions in connection with a violation of a supervised release. Johnson v. United States, 529 U.S. 694, 700 (2000) (where the acts of supervised release violation are criminal in their own right, the Government can attempt a separate prosecution). When considering whether or not to indict an individual, the Government is not required to initiate prosecution immediately. Stoner v. Graddick, 751 F.2d 1535, 1542-43 (11th Cir. 1985). Therefore, because the Defendant has failed to demonstrate another form of prejudice (e.g. impairment of defense), he has failed to satisfy the first prong of the Lovasco pre-indictment delay test.

### b. Tactical Advantage

In order to satisfy the second Lovasco prong, a defendant must show *deliberate* prosecutorial delay used to gain a *tactical advantage*. United States v. Foxman, 87 F.3d 1220 (11th Cir. 1996) (emphasis added). Here, the Defendant has failed to demonstrate (1) a deliberate prosecutorial delay, or (2) any plausible tactical advantage enjoyed by the Government as a result of indicting the Defendant two years following the alleged criminal activity.

During the September 25, 2006 hearing, Officer Calvert testified that he had contacted the Government a number of times between 2004 and 2006 to inquire about possibly indicting the Defendant for his alleged poaching of turtle eggs in June 2004. Officer Calvert noted the apparent lack of interest the Government demonstrated in prosecuting this case each time he called. He also testified that the Government apparently had a number of other cases which were of higher priority. The Defendant offered no evidence to refute this. At most, the aforementioned evidence demonstrates

11

that the Government delayed seeking an indictment against the Defendant because of its lack of interest in prosecuting the case. This falls far short from the requisite showing of intentional delay to gain a tactical advantage over the Defendant.

Additionally, during the evidentiary hearing, the Defendant conceded that the Government had not gained a evidentiary advantage from its delay in indicting him. Rather, the Defendant suggests that the Government's 'tactical advantage' comes via his continual incarceration. This argument is devoid of merit. The Defendant has failed to satisfy the second Lovasco prong.

2. Statutory Speedy Trial

The time period for the Speedy Trial Act begins to run only after an individual is "accused," either by an arrest and formal charge or by an indictment. United States v. Sayers, 698 F.2d 1128, 1131 (11th Cir. 1983); United States v. Nixon, 634 F.2d 306, 309 (11th Cir. 1981). A statutory speedy trial claim must stand or fall on its own merits, based upon each specific offense. Id.

Here, the Defendant was arrested on June 4, 2004 in connection with six violations of his supervised release. Following this, the Defendant appeared in Court and admitted to his violations. Shortly thereafter, the Probation Department filed an amended petition for revocation of supervised release which included the addition of a seventh violation based on the taking of sea turtle eggs. The Defendant made another appearance in regard to the seventh alleged violation. Neither the June 4, 2004 arrest nor subsequent appearances were in connection with the specific offense for which the Defendant is presently facing. To the contrary, these actions were in connection with the Defendant's

1999 conviction and sentencing.[1] It wasn't until the Government's July 21, 2006 formal indictment and subsequent arrest of the Defendant that the clock began to run for statutory speedy trial purposes in this matter. Therefore, the Defendant's statutory speedy trial argument should be denied.

3. *Constitutional Speedy Trial*

The Defendant maintains that the delay between his June 2004 arrest and the Government's filing of the July 2006 indictment violates his Sixth Amendment right to speedy trial. This is incorrect. Constitutional speedy trial measures delays between indictment and arrest. United States v. Clark, 83 F.3d 1350 (11th Cir. 1996). Pre-indictment delay, as asserted here, is addressed through the applicable statutes of limitation, and in certain instances, Fifth Amendment Due Process claims. Stoner, 751 F.2d at 1540-41. Accordingly, the Defendant's constitutional speedy trial claim lacks merit.

Even if a Sixth Amendment speedy trial analysis were applicable to this case, the Defendant would still not prevail. In Barker the Supreme Court established a four-part test ("Barker Test") to determine whether or not a defendant's Sixth Amendment right to speedy trial has been violated. Barker v. Wingo, 407 U.S. 514, 530 (1972). This test asks:

1. Whether delay before trial was uncommonly long;
2. Whether the government or the criminal defendant is more to blame for that delay;
3. Whether the defendant asserted his right to a speedy trial; and
4. Whether the defendant suffered prejudice as a result of the delay.

Id. The Eleventh Circuit has found that "[t]hese [four] factors must be considered together-

---

[1] As previously noted, the Defendant was convicted in 1999 and sentenced to five years of imprisonment and three years of supervised release.

13

no single factor is sufficient to find a deprivation of the defendant's Sixth Amendment right." United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997). If the first three factors weigh heavily in favor of the Defendant, the Defendant need not demonstrate he suffered actual prejudice [fourth prong]. United States v. Davenport, 935 F.2d 1223, 1239 (11th Cir. 1991).

### 1. Length of Delay

To trigger a speedy trial analysis, a defendant must show that the delay between indictment and his arrest is "presumptively prejudicial." Doggett, 505 U.S. at 652. Once this threshold point is established, the Court may proceed with the rest of the Barker test. Id. Generally, delays that exceed one year are considered "presumptively prejudicial." Id. Here, there was no delay between indictment and arrest. The Defendant was indicted on July 21, 2006 and was arrested the same day. This delay is not "presumptively prejudicial."

### 2. Reason for the Delay

"Because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner...the burden is on the prosecution to explain the cause of the pre-trial delay." United States v. Ingram, 446 F.3d 1332, 1337 (11th Cir. 2006) citing United States v. Brown, 169 F.3d 344, 349 (6th Cir. 1999). The time between indictment (July 21, 2006) and arrest (July 21, 2006) was less than one day. Accordingly, there was no cognizable delay in this matter.

### 3. Defendant's Assertion of his Speedy Trial Right

The Defendant has filed his Motion to Dismiss prior to the trial and has satisfied

14

this prong of the analysis.

### 4. Prejudice

In this Circuit, a defendant generally must show actual prejudice unless the first three factors in Barker all weigh heavily against the government. United States v. Davenport, 935 F.2d 1223, 1239 (11th Cir. 1991). Here, the first three factors do not weigh heavily against the Government, therefore the Defendant must demonstrate "actual prejudice." Actual prejudice in constitutional speedy trial cases can be shown in three ways: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) possibility that the accused's defense will be impaired. Doggett, 505 U.S. at 654; United States v. Hayes, 40 F.3d 362, 366 (11th Cir. 1994).

In the matter before the Court, the Defendant was serving a sentence in connection with a previous conviction during the alleged delay. In addition to this, there is no evidence suggesting the Defendant was aware that the Government planned on seeking a future indictment against him. Therefore, the first two forms of prejudice are inapplicable. The only other possible prejudice, then, is "impairment of defense." The Defendant, however, has conceded that the alleged delay in indicting him has not impaired his defense. Therefore, the Defendant has not suffered any prejudice.

This Court has applied the four-prong speedy trial test set forth in Barker and finds that the Defendant's Sixth Amendment speedy trial rights were not violated. Accordingly, the Court recommends that the Defendant's Motion to Dismiss be DENIED.

### Recommendation

Based on the foregoing reasons, this Court RECOMMENDS to the District Court

that the Defendant's Motion to Dismiss Indictment (DE 25) be DENIED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T.K. Hurley, within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)©. Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir.1982) cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this 28 day of September 2006.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Daniel T. K. Hurley
Counsel of Record